**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND; and CHARLES A. WHOBREY, as Trustee | ) ) ) ) | Case No. 21-cv-1607 |
| *Plaintiffs,* | ) ) | Judge |
| v. | ) ) | Magistrate Judge |
| FAMOUS DISTRIBUTION, INC., d/b/a FAMOUS SUPPLY CO. OF WHEELING and d/b/a FAMOUS SUPPLY CO. OF WASHINGTON, an Ohio corporation, | ) ) ) ) ) | |
| *Defendant.* | ) | |

## COMPLAINT

Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund"), and Charles A. Whobrey, one of the Pension Fund's present trustees, allege as follows:

## JURISDICTION AND VENUE

1.      This action is brought and maintained in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., and is a suit to recover employer contributions owed to the Pension Fund by Defendant in accordance with applicable collective bargaining and trust fund agreements.

2.      This Court has jurisdiction over this action under section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

3.      Venue lies in this Court under section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that the Pension Fund is an "employee benefit plan" as that term is defined in ERISA and is administered at its principal place of business in Chicago, Illinois. Venue is also proper in this Court pursuant to the forum selection clause contained in the Pension Fund's Trust

Agreement which designates this district as the appropriate forum for lawsuits to collect unpaid contributions.

**PARTIES**

4.      The Pension Fund is an employee benefit plan and trust, with its principal and exclusive office located at 8647 West Higgins Road in Chicago, Illinois.

5.      The Pension Fund is primarily funded by contributions remitted by multiple participating employers pursuant to negotiated collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters ("IBT") on behalf of employees of those same employers. All principal and income from such contributions and investments thereof is held and used for the exclusive purpose of providing pension benefits to participants and beneficiaries of the Pension Fund and paying the administrative expenses of the Pension Fund.

6.      Plaintiff Charles A. Whobrey is a trustee and "fiduciary" of the Pension Fund as that term is defined in ERISA. Pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Charles A. Whobrey is authorized to bring this action on behalf of the Pension Fund and its participants and beneficiaries in his capacity as a trustee and fiduciary.

7.      Defendant Famous Distribution, Inc. ("Famous") is a corporation organized under the laws of the State of Ohio. Famous is an "employer" and a "party-in-interest" as those terms are defined by sections 3(5) and 3(14)(C) of ERISA, 29 U.S.C. §§ 1002(5) and 1002(14)(C).

**BACKGROUND INFORMATION**

8.      Local Union No. 697 ("Local 697") of the IBT is a labor organization which represents, for the purpose of collective bargaining, certain employees of Famous and employees of other employers in industries affecting interstate commerce.

## The 2015 CBAs

9.      On or about September 10, 2015, Famous and Local 697 entered into two collective bargaining agreements pursuant to which Famous agreed to make contributions to the Pension Fund on behalf of certain of its covered employees. One collective bargaining agreement related to work done for Famous (d/b/a Famous Supply Co. of Wheeling) in Wheeling, West Virginia and was effective as of August 17, 2015 (the "2015 West Virginia CBA"). The other collective bargaining agreement related to work done for Famous (d/b/a Famous Supply Co. of Washington) in Washington, Pennsylvania and was effective as of October 1, 2015 (the "2015 Pennsylvania CBA" and, collectively with the 2015 West Virginia CBA, the "2015 CBAs").

10.      A true copy of the 2015 West Virginia CBA is attached hereto as **Exhibit 1**.

11.      A true copy of the 2015 Pennsylvania CBA is attached hereto as **Exhibit 2**.

12.      Article XIV, Section 1 of the 2015 West Virginia CBA provides, in relevant part, "[Famous] shall contribute to the [Pension Fund] . . . for each employee covered by this Agreement who has been on the payroll ninety (90) days or more." Article XIV, Section 1 of the 2015 Pennsylvania CBA contains identical language.

13.      Article XVII, Section 1 of the 2015 West Virginia CBA provides:

This Agreement shall be in full force and effect from August 17, 2015 to, and including, August 16, 2018, and shall continue in full force and effect from year-to-year thereafter unless written notice to desire to cancel or terminate Agreement is served by either party upon the other at least sixty (60) days prior to date of expiration.

Article XVII, Section 1 of the 2015 Pennsylvania CBA contains an identical duration clause, except that it includes the dates "from October 1, 2015 to, and including, September 30, 2018" instead of "August 17, 2015 to, and including, August 16, 2018."

14.     Neither Famous nor Local 697 served notice of an intent to cancel either the 2015 Pennsylvania CBA or the 2015 West Virginia CBA at least 60 days prior to either agreement's date of expiration.

15.     The Pension Fund has requested that Famous provide a copy of any written notice it or Local 697 sent pursuant to Article XVII, Section 1 of the 2015 CBAs.

16.     The only notice provided to the Pension Fund is a May 17, 2018 letter from Local 697 to Famous in which Local 697 states, "We take this opportunity to notify you that we are desirous of making changes to our present Agreement which expires August 16, 2018. Copies of our new proposals will be presented to you in the near future."

17.     A true copy of the letter referenced in the previous paragraph is attached hereto as **Exhibit 3**.

### Trust Agreement and Plan Provisions

18.     Famous agreed to be bound by the terms of the Pension Fund Trust Agreement (the "Trust Agreement") and all rules and regulations promulgated by the Trustees under that Trust Agreement.

19.     A true copy of the Trust Agreement is attached hereto as **Exhibit 4**.

20.     Article XIV, Section 3 of the 2015 West Virginia CBA provides:

By the execution of this Agreement, the Employer authorizes the Employer's Association, which are parties hereto, to enter into appropriate Trust Agreement necessary for the administration of such fund, and to designate the Employer Trustees under such Agreement hereby waiving all notice hereof and ratifying all actions already taken or to be taken by the such Trustees within the scope of their authority.

Article XIV, Section 3 of the 2015 Pennsylvania CBA contains an identical provision.

21.     The first paragraph of Article III, Section 1 of the Trust Agreement provides, in relevant part:

Each Employer shall remit continuing and prompt Employer Contributions to the Trust Fund as required by the applicable collective bargaining agreement, participation agreement, this Agreement and/or other written agreement to which the Employer is a party, applicable law and all rules and requirements for participation by Employers in the Fund as established and interpreted by the Trustees in accordance with their authority . . . .

22. Article III, Section 7(a) of the Trust Agreement provides as follows:

An Employer is obliged to contribute to the Fund for the entire term of any collective bargaining agreement or participation agreement or any other written agreement accepted by the Fund (including any extension of a collective bargaining agreement through an evergreen clause or through an extension agreement of eighteen months or less) on the terms stated in that collective bargaining agreement, except as provided in subpart (b) of this Section 7 and Section 20 of Article IV of this Agreement. The following provisions contained in any agreement shall not be enforceable against the Fund (regardless of when the agreement was entered into): a) a provision contained in either a collective bargaining agreement or participation agreement or any agreement entered into by an Employer and Union subsequent to the collective bargaining agreement that purports to authorize the elimination or reduction of the duty to contribute to the Fund before the termination of the collective bargaining agreement and/or participation agreement and/or other agreement under its duration provision (including any extension through an evergreen clause) and b) a provision of an agreement that purports to eliminate or reduce the duty to contribute to the Fund contained in an agreement that extends a collective bargaining agreement for a period of eighteen months or less from its termination.

23. Accordingly, under Article III, Section 7(a) of the Trust Agreement and as a result of the failure to give timely notice described above, the obligation to contribute to the Pension Fund under the 2015 West Virginia CBA was extended by one year to (and including) August 16, 2019 and the obligation to contribute to the Pension Fund under the 2015 Pennsylvania CBA was extended by one year to (and including) September 30, 2019.

24. Article XIV, Section 4 of the Trust Agreement provides, in part, as follows:

In addition to any other remedies to which the parties may be entitled, an Employer shall be obligated to pay interest on any contributions, withdrawal liability and/or other moneys due to the Trustees from the date when the payment was due to the date when the payment is made, together with all expenses of collection incurred by the Trustees, including, but not limited to, attorneys' fees and such fees for late payment as the Trustees determine and as permitted by law.

The interest payable by an Employer with respect to past due contributions and/or other money (other than withdrawal liability) prior to the entry of a judgment, shall be computed and charged to the Employer (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater). . . . Any judgment against an Employer for contributions and/or withdrawal liability owed to this Fund shall include the greater of (a) a doubling of the interest computed and charged in accordance with this section or (b) single interest computed and charged in accordance with this section plus liquidated damages in the amount of 20% of the unpaid contributions and/or withdrawal liability. The interest rate after entry of a judgment against an Employer for contributions and/or other amounts due (other than withdrawal liability) shall be due from the date the judgment is entered until the date of payment, shall be computed and charged to the Employer on the entire judgment balance (a) at an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) at an annualized interest rate of 7.5% (whichever is greater), and such interest shall be compounded annually.

25.     Article XIV, Section 11 of the Trust Agreement provides as follows:

A participating Employer and Union that contributes to the Fund shall be bound by the provisions of this Agreement and the obligations imposed by this Agreement shall survive the termination of the participation in the Fund. To the extent there is a conflict between this Agreement and any provisions of a collective bargaining agreement and/or a participation agreement and/or any other union-employer agreement, this Agreement shall control.

26.     Section 3.01(a) of the Pension Fund's Plan provides, in relevant part:

A Collective Bargaining Agreement shall be acceptable only if such agreement requires a Contributing Employer to make Employer Contributions . . . for the *entire term* of such Collective Bargaining Agreement. (Emphasis added.)

27.     A true copy of the Pension Fund's Plan is attached hereto as **Exhibit 5**.

28.     Article III, Section 1 of the Trust Agreement provides, in relevant part:

Except as provided in this Section, Section 7(b) of Article III and Section 20 of Article IV, the obligation to make such Employer Contributions shall continue (and cannot be retroactively reduced or eliminated) after termination of the collective bargaining agreement until the date the Fund receives from the Employer (at the address specified above sent by certified mail with return receipt requested): a) a collective bargaining agreement signed by both the Employer and the Union that eliminates the duty to contribute to the Fund or b) written

notification that accurately indicates that negotiations with the Union have reached impasse after collective bargaining agreement termination and the Employer has lawfully implemented a proposal to withdraw from the Fund. Such Employer Contributions shall not be required during a strike or lockout, unless the Union and Employer mutually agree otherwise in writing.

## **STATUTORY AUTHORITY**

29.    Section 515 of ERISA, 29 U.S.C. § 1145, provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

30.    Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2) provides:

In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan –

    (A)    the unpaid contributions,

    (B)    interest on the unpaid contributions,

    (C)    an amount equal to the greater of--

        (i)    interest on the unpaid contributions, or

        (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

    (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E)    such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

## STATUTORY AND CONTRACTUAL VIOLATIONS

31.     On October 19, 2018, the Pension Fund received a copy of two new collective bargaining agreements between Famous and Local 697, one relating to the Wheeling, West Virginia location (the "2018 West Virginia CBA") and the other relating to the Washington, Pennsylvania location (the "2018 Pennsylvania CBA" and, collectively with the 2018 West Virginia CBA, the "2018 CBAs").

32.     A true copy of the 2018 West Virginia CBA is attached hereto as **Exhibit 6**.

33.     A true copy of the 2018 Pennsylvania CBA is attached hereto as **Exhibit 7**.

34.     Article XIV of the 2018 West Virginia CBA provides, in relevant part, "The Employer shall cease contributions to the Teamsters Central States Pension Plan on behalf of any bargaining unit employees effective August 16, 2018." Article XIV of the 2018 Pennsylvania CBA contains an identical provision.

35.     Famous has not paid pension contributions to the Pension Fund on behalf of employees covered by the 2015 West Virginia CBA for any period after August 18, 2018. Famous has not paid pension contributions to the Pension Fund on behalf of employees covered by the 2015 Pennsylvania CBA for any period after September 29, 2018.

36.     Under Article XVII, Section 1 of the 2015 West Virginia CBA, Article III, Section 7(a) of the Trust Agreement, and Section 3.01(a) of the Pension Fund's Plan, Famous's obligation to contribute to the Pension Fund under the 2015 West Virginia CBA remained in effect until (and including) August 16, 2019, because neither party served on the other timely written notice of a desire to terminate the 2015 West Virginia CBA. Furthermore, Article XIV of the 2018 West Virginia CBA, which purports to eliminate Famous's obligation to contribute to the Pension Fund under the 2015 West Virginia CBA, is not enforceable against the Pension

Fund under Article III, Section 7(a) of the Trust Agreement, Section 3.01(a) of the Pension Fund's Plan, and principles of contract law applicable to third-party beneficiaries.

37.     Similarly, under Article XVII, Section 1 of the 2015 Pennsylvania CBA, Article III, Section 7(a) of the Trust Agreement, and Section 3.01(a) of the Pension Fund's Plan, Famous's obligation to contribute to the Pension Fund under the 2015 Pennsylvania CBA remained in effect until (and including) September 30, 2019  as neither party had served timely written notice of a desire to terminate. Furthermore, Article XIV of the 2018 Pennsylvania CBA, which purports to eliminate Famous's obligation to contribute to the Pension Fund under the 2015 Pennsylvania CBA, is not enforceable against the Pension Fund under Article III, Section 7(a) of the Trust Agreement, Section 3.01(a) of the Pension Fund's Plan, and principles of contract law applicable to third-party beneficiaries.

38.     For the period of August 19, 2018 through August 16, 2019, Famous has not remitted contributions to the Pension Fund on behalf of covered employees under the 2015 West Virginia CBA. Similarly, for the period of September 30, 2018 through September 30, 2019, Famous has not remitted contributions to the Pension Fund on behalf of covered employees under the 2015 Pennsylvania CBA. Famous has thus failed to perform its statutory and contractual duties under ERISA, the 2015 West Virginia CBA, the 2015 Pennsylvania CBA, the Trust Agreement, and the Pension Fund's Plan.

39.     Because Famous has failed to remit Pension Fund contributions, Famous has breached the provisions of ERISA, the 2015 CBAs, the Trust Agreement, and the Pension Fund's Plan by failing to pay all of the contributions (and interest due thereon) owed to the Pension Fund.

40.    The Pension Fund relies upon participating employers to self-report the work history of eligible employees. The self-reporting system requires participating employers to identify those employees for whom contributions are owed and requires the employers to identify the weeks worked by the covered employees. Based upon the employee work history reported by the employers, the Pension Fund bills the employers for contributions.

41.    For the period of August 19, 2018 through August 16, 2019, Famous has not self-reported the work history of its eligible employees under the 2015 West Virginia CBA to the Pension Fund. Similarly, for the period of September 30, 2018 through September 30, 2019, Famous has not self-reported the work history of its eligible employees under the 2015 Pennsylvania CBA to the Pension Fund.

42.    Because Famous has not reported employee work history to the Pension Fund for the relevant time periods, the Pension Fund does not know with specificity the amount owed by Famous. However, based upon the employee work history previously reported by Famous to the Pension Fund as of August 16, 2018, the Pension Fund estimates that Famous owes the Pension Fund approximately $11,252.80 for unpaid contributions (not including interest) under the 2015 West Virginia CBA for billing periods after August 16, 2018. The Pension Fund also estimates that Famous owes the Pension Fund an additional $11,252.80 for unpaid contributions (not including interest) under the 2015 Pennsylvania CBA for billing periods after September 29, 2018. The exact contribution amount owed will be determined in the course of discovery.

43.    Alternatively, even assuming that the obligations to contribute to the Pension Fund under the 2015 CBAs were timely terminated in 2018, under Article III, Section 1 of the Trust Agreement, Famous owes contributions through October 20, 2018 because that is the last date of the billing period in which the Pension Fund received the 2018 CBAs. At a minimum,

Famous has breached the Trust Agreement by failing to pay approximately $1,947.60 in contributions (not including interest) under the 2015 West Virginia CBA for the period of August 18, 2018 through October 20, 2018 and by failing to pay approximately $649.20 in contributions (not including interest) under the 2015 Pennsylvania CBA for the period of September 30, 2018 through October 20, 2018.

**WHEREFORE**, Plaintiffs request the following relief:

(a)     A judgment against Defendant in favor of the Pension Fund, pursuant to section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), for:

(i)     the unpaid contributions owed to the Pension Fund;

(ii)    interest on the unpaid contributions computed and charged at the greater of (a) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (b) an annualized interest rate of 7.5%;

(iii)   an amount equal to the greater of interest on the unpaid contributions or liquidated damages of 20% of the unpaid contributions; and

(iv)    attorney's fees and costs.

(b)     Post-judgment interest computed and charged on the entire balance of the judgment at the greater of (i) an annualized interest rate equal to two percent (2%) plus the prime interest rate established by JPMorgan Chase Bank, NA for the fifteenth (15th) day of the month for which the interest is charged, or (ii) at an annualized interest rate of 7.5%, and with said interest to be compounded annually; and

(c)     For such further or different relief as this Court may deem proper and just.

Respectfully submitted,

*/s/ Daniel E. Sullivan*
Daniel E. Sullivan
(ARDC #6330522)
CENTRAL STATES FUNDS
Law Department
8647 W. Higgins Road, 8th Floor
Chicago, Illinois 60631
847-582-5078
Dsulliva@centralstatesfunds.org

March 24, 2021                    *ATTORNEY FOR PLAINTIFFS*